UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

---------------------------------------------------------------X
BASF CORPORATION,

            Plaintiff,

   -against-

SCOTTO & SCOTTO CORPORATION a/k/a
SCOTTO AND SCOTTO CORPORATION d/b/a
ANTHONY'S AUTO BODY & REFINISHING.

            Defendant.
---------------------------------------------------------------X

Civil Action No. _____

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff BASF Corporation ("BASF"), by and through undersigned counsel, as and for its Complaint against the above-captioned defendant Scotto & Scotto Corporation a/k/a Scotto and Scotto Corporation d/b/a Anthony's Auto Body & Refinishing ("Defendant"), alleges as follows:

## THE PARTIES

1. BASF is a citizen of the States of Delaware and New Jersey. BASF is incorporated under the laws of the State of Delaware and has its principal place of business in the State of New Jersey.

2. On information and belief, Defendant is a corporation organized and existing under the laws of the State of Florida. At times relevant to the Complaint, Defendant was doing business at 3573 Mercantile Ave #5, Naples, Florida 34104. Upon information and belief, Defendant currently has inactive corporate status in Florida. Defendant's information on file with the Florida Division of Corporations indicates that Defendant's registered agent is Nicole Scotto, located at 8197 Sanctuary Drive, Unit 2, Naples, Florida 34104.

3. BASF is in the business of selling aftermarket paints, refinishes, coating, primers, thinners and reducers as well as other related products and materials for the reconditioning, refinishing and repainting of automobiles, trucks, and other vehicles (collectively, "Refinish Products"). BASF resells the Refinish Products to distributors that in turn sell the Refinish Products to automotive body shops that are in the business of reconditioning, refinishing, and repainting of automobiles, trucks, and other vehicles.

4. Defendant was a body shop engaged in the business of reconditioning, refinishing and repainting automobiles, trucks, and other vehicles.

## JURISDICTION AND VENUE

5. The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00, exclusive of interest and costs, and complete diversity exists between the parties, as BASF is a citizen of the States of Delaware and New Jersey, and Defendant is a citizen of the State of Florida. Defendant is subject to the jurisdiction of this Court because, among other things, a substantial part of the events giving rise to this claim occurred in Florida.

6. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to the claims asserted herein occurred in the District and Defendant is subject to the personal jurisdiction in this District.

7. Michigan substantive law governs BASF's claims per Paragraph 8 of the Requirements Agreement.

## GENERAL ALLEGATIONS

*The Terms of the Requirements Agreement*

8. On or about February 1, 2017, BASF and Defendant entered into a Requirements Agreement, a true and correct copy of which is attached hereto as **Exhibit A** and incorporated herein by reference.

9. Pursuant to Paragraphs 1 and 2 of the Requirements Agreement, Defendant was required to fulfill one hundred percent of its requirements for Refinish Products up to a minimum purchase requirement of $439,000.00 ("Minimum Purchases") in the aggregate with BASF Refinish Products at suggested refinish pricing.

10. Pursuant to Paragraph 3 of the Requirements Agreement, in consideration for Defendant fulfilling all of its obligations under the Requirements Agreement, BASF paid Defendant $35,000.00 ("Contract Fulfillment Consideration").

11. Also pursuant to Paragraph 3 of the Requirements Agreement, if the Requirements Agreement was terminated for any reason prior to Defendant purchasing a minimum of $439,000.00 of BASF Refinish Products, Defendant was required to refund the Contract Fulfillment Consideration to BASF in accordance with the following schedule:

| Purchases | Contract Fulfillment Consideration Refund |
|---|---|
| Less than 1/5 of Minimum Purchases | 110% |
| Less than 2/5 and greater than 1/5 of Minimum Purchases | 95% |
| Less than 3/5 and greater than 2/5 of Minimum Purchases | 75% |
| Less than 4/5 and greater than 3/5 of Minimum Purchases | 55% |
| Less than 5/5 and greater than 4/5 of Minimum Purchases | 35% |
| After 5/5 of Minimum Purchases | 0% |

***Defendant's Breach of the Requirements Agreement***

12. In or about April 2019, Defendant closed its business operations and refused to purchase any further Refinish Products in violation of Paragraphs 1, 2, and 3 of the Requirements Agreement.

13. Defendant's closure of its business operations and refusal to continue purchasing Refinish Products constituted a termination of the Requirements Agreement. Moreover, Defendant's termination of the Requirements Agreement occurred prior to Defendant purchasing a minimum of $439,000.00 of Refinish Products.

14. In fact, Defendant's purchases of Refinish Products between signing the Requirements Agreement and the breach totaled only $85,458.47, approximately 1/5 of its Minimum Purchases requirement of $439,000.00 of BASF Refinish Products. A purchase balance of at least $353,541.53 remains due and owing under the terms of the Requirements Agreement.

15. In violation of Paragraph 3 of the Requirements Agreement, Defendant has failed and refused to refund BASF the sum of $33,250.00 (representing 95% of $35,000.00) in unearned Contract Fulfillment Consideration.

16. BASF has fulfilled its obligations and remains ready, willing, and able to perform all obligations, conditions, and covenants required under the Requirements Agreement.

17. By correspondence dated June 21, 2019, a true and accurate copy of which is attached hereto as **Exhibit B** and incorporated herein by reference, BASF gave Defendant notice that it was in default of its contractual obligations and demanded a refund of the Contract Fulfillment Consideration. In addition, BASF notified Defendant that it would seek additional damages that it is entitled to if the matter progressed to litigation.

18. Despite the foregoing, Defendant has failed to satisfy its obligations under the terms of the Requirements Agreement.

## COUNT 1
### Breach of Contract

19. BASF incorporates by reference the allegations contained in the above paragraphs.

20. Pursuant to Paragraphs 1 and 2 of the Requirements Agreement, Defendant was required to purchase from BASF one hundred percent of its requirements for Refinish Products up to a Minimum Purchases requirement of $439,000.00 in the aggregate of BASF Refinish Products at suggested refinish pricing.

21. Despite its obligations under the Requirements Agreement and in breach thereof, Defendant has failed to meet its Minimum Purchases requirement under the Requirements Agreement and failed to pay BASF the amounts due and owing thereunder. As of the date of the filing of this Complaint, the balance due and owing on Defendant's Minimum Purchases requirement is approximately $353,541.53.

22. As a result of the unjustified breach of the Requirements Agreement by Defendant without legal excuse and, pursuant to Paragraph 3 of the Requirements Agreement, Defendant is obligated to repay to BASF 95% of the $35,000.00 Contract Fulfillment Consideration, which is $33,250.00.

23. As of the date of the filing of this Complaint, Defendant has damaged BASF in the following amounts under the Requirements Agreement:

    a. $33,250.00 for refund of 95% of the Contract Fulfillment Consideration; and

    b. $353,541.53 for the remaining balance of the Minimum Purchases requirement of $439,000.00.

24. BASF has performed and fulfilled all obligations and conditions required of it under the terms of the Requirements Agreement. Nevertheless, Defendant's breaches of the Requirements Agreement have resulted in damage to BASF in the amount of at least $386,791.53.

**WHEREFORE**, BASF demands judgment against Defendant, awarding an amount to be determined at trial, together with interest thereon, awarding costs, counsel fees, and litigation expenses, and such other and further relief as the Court may seem just and proper.

## COUNT II
### Declaratory Relief

25. BASF incorporates by reference the allegations contained in the above paragraphs.

26. BASF requests a judicial declaration of BASF's and Defendant's respective rights under the Requirements Agreement.

27. An actual dispute and justiciable controversy presently exists between BASF and Defendant concerning its rights and obligations under the Requirements Agreement. Defendant contends that it has not breached the Requirements Agreement. BASF disagrees and contends that the Requirements Agreement is in full force and effect, and that Defendant is in breach of the Requirements Agreement.

28. A judicial declaration is necessary to establish BASF's and Defendant's rights and duties under the Requirements Agreement.

**WHEREFORE**, BASF demands declaratory judgment ruling that the Requirements Agreement is still in full force and effect, awarding costs, counsel fees, and litigation expenses, and such other and further relief as the Court may seem just and proper.

## DEMAND FOR JURY TRIAL

29. Pursuant to Fed. R. Civ. P. 38(b), BASF demands a trial by jury on all counts and as to all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, BASF prays that this Court enter Judgment in its favor and against Defendant as follows:

a. Awarding BASF monetary damages in an amount to be determined at trial, but not less than $386,791.53 together with prejudgment interest;

b. Awarding BASF declaratory judgment in that the Requirements Agreement is in full force and effect;

c. Awarding BASF all costs and fees of this action as permitted by law; and

d. Awarding BASF such other and further relief as this Court deems just and proper.

Dated: July 30, 2021

CARLTON FIELDS, P.A.

By: */s/ Daniel C. Johnson*
Daniel C. Johnson
Florida Bar No. 522880
CARLTON FIELDS, P.A.
200 S. Orange Ave., Suite 1000
Orlando, FL 32801
(407) 849-0300 (telephone)
(407) 648-9099 (facsimile)
djohnson@carltonfields.com (primary)
dcarlucci@carltonfields.com (secondary)
*Attorneys for Plaintiff*

# Exhibit A

## REQUIREMENTS AGREEMENT

Agreement made as of _FEB 1, 2017_ ("Effective Date"), with each twelve (12) months thereafter being a Contract Year by and between BASF Corporation, 26701 Telegraph Road, Southfield, MI 48033 ("BASF"), and Scotto and Scotto Corporation d.b.a. Anthony's Auto Body & Refinishing, 3573 Mercantile Avenue #5, Fort Myers, FL 34104 ("BODY SHOP").

WHEREAS, BODY SHOP engages in the business of refinishing and repainting the bodies of automobiles, trucks, and other vehicles, ("Business") either directly or through persons or legal entities over which BODY SHOP has control ("Controlled Businesses"), which requires the use of after-market paints, refinishes, coatings, primers, thinners, and reducers ("Refinish Products"); and

WHEREAS, BASF is a manufacturer of Refinish Products;

NOW THEREFORE, it is agreed by and among the parties as follows:

1. Term: The Term of this Agreement shall commence with the first full calendar month subsequent to the Effective Date and continue until BODY SHOP and or until its Controlled Businesses have purchased $439,000 in the aggregate of BASF Glasurit and RM Products, at suggested refinish pricing ("Minimum Purchase Requirements"), subsequent to the Effective Date. However, BASF shall have the right to terminate this Agreement at any time if BODY SHOP or any Controlled Business makes an assignment for the benefit of creditors, declares or is declared bankrupt, or either a controlling interest in the BODY SHOP or substantially all of the assets of the BODY SHOP are sold to a third party who is already under an obligation to use BASF Products pursuant to a contract with BASF Corporation or any of its subsidiaries.

2. Purchase of Requirements of Products: During the Term of this Agreement, BODY SHOP shall, and shall cause each of its Controlled Businesses to purchase from an authorized BASF distributor one hundred percent (100%) of their Refinish Products requirements for the Business specifying only BASF Glasurit and RM brand products.

3. Contract Fulfillment Consideration: Within forty-five (45) days of the Effective Date of this Agreement, BASF shall pay to BODY SHOP $35,000 in consideration of BODY SHOP fulfilling all of its obligations under this Agreement for the entire Term. Should this Agreement terminate for any reason prior to the expiration of the Term set forth above or should BODY SHOP be sold during the Term, in addition to whatever rights and obligations the parties may have to each other, BODY SHOP shall

promptly, but in no event more than sixty (60) days, refund the Contract Fulfillment Consideration in accordance with the following schedule:

| Purchases | | Contract Fulfillment Consideration Refund |
|---|---|---|
| a. | less than 1/5th of Minimum Purchases | 110% |
| b. | less than 2/5th and greater than 1/5th of Minimum Purchases | 95% |
| c. | less than 3/5th and greater than 2/5th of Minimum Purchases | 75% |
| d. | less than 4/5th and greater than 3/5th of Minimum Purchases | 55% |
| e. | less than 5/5th and greater than 4/5th of Minimum Purchases | 35% |
| f. | After 5/5th of Minimum Purchases | 0% |

4. <u>Monthly Rebate</u>: Beginning the first full calendar month after the execution of this Agreement by both parties and continuing for every calendar month thereafter during the Term of this Agreement, BASF shall cause the supplier of BASF Refinish Products to BODY SHOP to issue a credit to BODY SHOP equal to Two percent (2.0%) of BODY SHOP's purchases of BASF Glasurit and RM Refinish Products, at suggested refinish price, from the prior month. Should this Agreement terminate for any reason prior to the expiration of the Term set forth above or should BODY SHOP and/or any of its Controlled Businesses be sold during the Term, in addition to whatever rights and obligations the parties may have to each other, BODY SHOP shall forfeit the right to this rebate.

5. <u>Severability</u>: In the event that any provision of this Agreement shall be held invalid or unenforceable for any reason by a court of competent jurisdiction, such provision or part thereof shall be considered separate from the remaining provisions of this Agreement, which shall remain in full force and effect. Such invalid or unenforceable provision shall be deemed revised to effect, to the fullest extent permitted by law, the intent of the parties as set forth therein.

6. <u>Loaned Equipment and Consigned Inventory</u>: BASF shall loan the following equipment to each of BODY SHOP's facilities or Controlled Businesses where the Business is conducted ("Loaned Equipment"):

-- Quart & Gallons Lids
-- Mixing Motor & Kit
-- Base Unit

BASF shall also place on consignment, 1 Set of Diamont Toners ("Consigned Inventory').

BASF shall prepare and forward to its filing agency, the required Form UCC-1 evidencing BASF's ownership of the Loaned Equipment, and BASF shall have the right to label the Loaned Equipment as the property of BASF, which signage shall remain clearly visible.

The Loaned Equipment shall remain the property of BASF, shall only be used in conjunction with BASF Refinish Products, and at the option of BASF, shall be surrendered to BASF at the end of this Agreement in the same condition as delivered, reasonable wear and tear excepted. All Loaned Equipment shall be installed by or at the direction of BODY SHOP, which shall be responsible for compliance with all applicable laws and regulations concerning the installation and operation of the Loaned Equipment. BODY SHOP hereby acknowledges receipt of the document entitled "Important Safety Notice." Computer equipment such as: (a) CPUs, (b) terminals, (c) keyboards, (d) printers, etc., are NOT explosion-proof and should NOT be installed or used within a mixing area where paint and paint products are dispensed or used. BODY SHOP agrees to: (a) install or have the Loaned Equipment installed in a safe area of its facility, and (b) BODY SHOP will indemnify and defend BASF in the event of any harm resulting from the installation, use, or maintenance of the Loaned Equipment. BODY SHOP shall be solely responsible for the costs of repair of the Loaned Equipment, including the costs of any replacement parts, in the event that BODY SHOP damages the Loaned Equipment as determined by BASF. Otherwise BASF shall provide maintenance, upgrades, and support as reasonably needed for all Loaned Equipment.

Upon demand by BASF, but in no event earlier than the termination or expiration of the Term, BODY SHOP shall pay BASF for all or that portion of the consumed Consigned Inventory in accordance with the then current prices for said Consigned Inventory and this Agreement. In the event that the Consigned Inventory is unopened, BODY Shop may return Consigned Inventory to BASF at no charge if the Consigned Inventory is deemed in saleable condition by BASF.

7. <u>Confidential Information</u>: This Agreement, and all of its terms, as well as any other information designated confidential and disclosed by either party to the other will be kept in confidence and restricted to those persons in the recipient's business who need to know same, except as to any such information which the recipient shows has become public information or which may be required to be disclosed by law.

8. <u>Governing Law</u>: This Agreement and performance or non-performance hereunder shall be governed by and construed under the laws of the State of Michigan without regard to principles of conflicts of law. Each party hereto submits to the jurisdiction of the courts located in Oakland County, Michigan in connection with any dispute arising under this Agreement.

9. <u>Assignment</u>: This Agreement may not be assigned or otherwise transferred except upon the prior written consent of both parties. However, subject to BASF's consent, BODY SHOP shall cause the party or parties which, individually or in the aggregate, acquire all or substantially all of the assets of any location of a Controlled Business where the Business is conducted, to assume the rights and obligations under this Agreement.

10. <u>Notices</u>: All notices from either party to the other relating to this Agreement are to be sent by First Class United States mail, postage prepaid (effective three (3) days after postmark), overnight mail or delivered personally to the respective addresses set forth above.

11. <u>Warranty</u>: The parties hereto represent and warrant to each other that the execution of this Contract is not in breach of any other legal obligation that said party may have to any third party and that each party hereto agrees to defend and indemnify the other for breach of this representation and warranty.

12. <u>Entire Agreement</u>: This Agreement constitutes the entire agreement between BASF and the BODY SHOP, terminating and superseding any prior agreements relating to the subject matter hereof and may be amended only by a writing signed by both parties, notwithstanding any course of dealing or the exchange of correspondence or documents not mutually executed.

13. <u>Expiration</u>: The offer reflected in this agreement is valid from sixty days of BASF's signature date; if the agreement is not executed by BODY SHOP on or before that date the offer will be deemed automatically withdrawn.

14. <u>Owners' Personal Guaranty:</u> In order to induce BASF to enter into this Agreement and extend the Contract Fulfillment Consideration Thomas Scotto, hereby unconditionally guarantees the performance of BODY SHOP under the terms of the Agreement and hereby personally guarantees any repayment of the Contract Fulfillment Consideration to BASF as may be required under this Agreement.

IN WITNESS WHEREOF, the parties have entered into this Agreement effective as of the day and year first above written.

**BASF Corporation**

BY: *[signature]*
TITLE: **V.P. Business Management Automotive Refinish**
DATE: 1/24/17

**Scotto and Scotto Corporation d.b.a. Anthony's Auto Body & Refinishing**

BY: *[signature]*
TITLE: pres
DATE: 2/7/17

**Thomas Scotto**

BY: *[signature]*
TITLE: pres
DATE: 2/7/17

# Exhibit B



We create chemistry

Writer's Direct Line: (973) 245-6021
E-mail Address: michaela.obrien@basf.com

June 21, 2019

**Via Federal Express**
**Tracking Nos.: 775534429352**
**775534388142**

Scotto and Scotto Corporation
dba Anthony's Auto Body & Refinishing
3573 Mercantile Avenue #5
Fort Myers, FL 34104

Anthony's Auto Body and Refinishing
8197 Sanctuary Drive, Unit #2
Naples, FL 34104

Re:   Requirements Agreement dated February 1, 2017 between BASF Corporation ("BASF") and Scotto and Scotto Corporation dba Anthony's Auto Body & Refinishing ("Anthony's Auto Body")

Dear Sir/Madam:

This letter serves as a demand for repayment of amounts owed to BASF Corporation ("BASF") of $33,250.00 as a result of Scotto and Scotto Corporation dba Anthony's Auto Body & Refinishing's ("Anthony's Auto Body") unilateral termination of the Requirements Agreement dated February 1, 2017, and Anthony's Auto Body's failure to honor its contractual obligations to BASF pursuant to the terms of the above-referenced Agreement. Specifically, since the breach of the Requirements Agreement, Anthony's Auto Body is in default of its obligation to: (1) purchase BASF Refinish Products as 100% of its requirements for Refinish Products; 2) purchase a minimum of $439,000.00 of BASF Refinish Products; and 3) repay the Contract Fulfillment Consideration of $33,250.00. (See Paragraph 3 of the Requirements Agreement).

In the event that Anthony's Auto Body fails to repay the amount owed, within ten (10) days of the date of receipt of this letter, BASF will refer this matter to litigation and will seek all damages to which BASF is entitled, for payment of the $33,250.00 and lost profits, resulting from Anthony's Auto Body's breach of the Requirements Agreement.

If you are represented by an attorney, please have him/her contact me. If you are not represented by an attorney and interested in resolving this matter amicably, please:

BASF Corporation
100 Park Avenue
Florham Park, NJ 07932
Tel: (800) 526-1072
www.basf.com/usa



We create chemistry

1. Contact me directly at telephone No. 973-245-6021; or

2. Remit payment in full by certified bank check to BASF Corporation, mailed to the attention of:

    **Mr. Randy Tucker**
    **Distribution Programs Coordinator**
    **BASF Corporation**
    **26701 Telegraph Road**
    **Southfield, MI 48033**

Very truly yours

*Michaela O'Brien*

Michaela O'Brien
Assistant General Counsel

/mo'b
cc:   Thomas LaValley
      Bryan Dimenna
      Janice Johnson
      Randy Tucker

**BASF Corporation**
100 Park Avenue
Florham Park, NJ 07932
Tel: (800) 526-1072
www.basf.com/usa



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.